UNITED STATES DISTRICT COURT FILED
FOR THE DISTRICT OF MASSACHUSETTS

2008 MAR 10 P 2: 25

U.S.

Civil Action No. _____

08 CA 10394 RCL

MAGISTRATE JUDGE Collings

| | |
|---|---|
| NATIONAL MEDICAL CARE, INC. d/b/a FRESENIUS MEDICAL CARE NORTH AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> NURSE RESOURCE GROUP, INC. and ANTHONY ALIUCCI, <br><br> Defendant. | |

## COMPLAINT AND JURY DEMAND

This is an action for breach of contract, misrepresentation, fraud, and unfair and deceptive

business practices in violation of Massachusetts General Laws chapter 93A ("Chapter 93A"). As

set forth herein, Nurse Resource Group, Inc., and its president, Anthony Aliucci, falsely held

themselves out to be experienced and expert recruiters of foreign nurses. The plaintiff, National

Medical Care, Inc., d/b/a Fresenius Medical Care North America ("Fresenius") relied on these

intentional misrepresentations and entered into a contract with the plaintiffs for the recruitment

of 54 nurses for its dialysis facilities. Fresenius also advanced $260,000 in recruitment fees to

the defendants after the defendants falsely claimed that they had located qualified nurses and

needed assistance with relocation expenses. To date, the defendants have not placed or even

introduced a single nurse to Fresenius and they have left Fresenius's demand for a return of the

$260,000 unanswered. Defendants' scheme to mislead and defraud the plaintiff constitutes

breach of contract, fraud, and unfair and deceptive business practices in violation of Chapter

93A.

## PARTIES

1.    Plaintiff National Medical Care, Inc. d/b/a Fresenius Medical Care North America

("Fresenius") is a Delaware corporation with its principal place of business in Waltham,

Massachusetts. Fresenius, directly and through its affiliates and subsidiaries, owns and operates

dialysis facilities in Massachusetts and throughout the United States.

2.    Defendant Nurse Resource Group, Inc. ("NRG") holds itself out to be a

Pennsylvania corporation with a principal place of business in Seven Fields, Pennsylvania. NRG

claims to locate, recruit, and relocate qualified nurses from foreign countries for placement with

medical facilities in the United States.

3.    Defendant Anthony Aliucci holds himself out to be the President of NRG. Upon

information and belief, defendant Aliucci resides at 904 Black Oak Court, Gibsonia,

Pennsylvania.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)

because: (a) Fresenius has a principal place of business is in Massachusetts, (b) defendant Aliucci

is a resident of Pennsylvania, (c) defendant NRG's  principal place of business is in

Pennsylvania, and (d) the amount in dispute exceeds $75,000.

5.    Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part

of the events or omissions giving rise to the claim occurred in Massachusetts.

## FACTUAL ALLEGATIONS

6.    Fresenius, directly and through various affiliates and subsidiaries, provides

dialysis services to patients with end stage renal disease.

7.      Fresenius and its affiliates operate a network of more than 1,500 dialysis clinics in North America.

8.      Fresenius's dialysis clinics are staffed by medical staff, including nurses, who are trained in how to provide dialysis to patients.

9.      Due to a shortage of qualified nurses in the United States, Fresenius has had difficulties hiring sufficient staff for its clinics.

10.     In 2007, Anthony Aliucci held himself out to be the President of a company called Nurse Resource Group, Inc. ("NRG"), which claimed to be a full-service international nurse recruitment company located in Pittsburgh, Pennsylvania with affiliate recruiting centers in multiple foreign countries.

11.     On its website, www.nurseresourcegroup.com, NRG makes the following claims about its business:

> A proven leader in the sourcing and recruitment of international professionals, NRG is equipped to help United States organizations such as hospitals, assisted living providers, and other specialty service centers meet the growing demand for nursing professionals nationwide.
>
> Recognizing the impending shortage of nursing and other medical professionals throughout the United States, NRG has developed a worldwide network of experienced staffing and sourcing organizations. With this network we have access to thousands of qualified, experienced and reliable medical professionals who are interested in working in the United States.
>
> With more than 10 years of experience in the acquisition of overseas talent, NRG is well versed in issues related to recruiting, certification, immigration, and orientation.

12.     Aliucci and NRG made substantially similar claims as the ones made on the NRG website to Fresenius in the late summer to early fall of 2007.

13.     In reliance on the claims made by Aliucci and NRG about their abilities, experience, and resources, in September of 2007, Fresenius entered into an Agreement for Recruitment of International Nurses ("Agreement") with NRG.  *See* Exhibit A.

14.     Under the terms of the Agreement, NRG promised that it would provide Fresenius 54 suitable nursing candidates to be placed at Fresenius's dialysis clinics as full-time nursing employees.

15.     Under the Agreement, NRG also promised that it would introduce the Nurse Candidates to Fresenius, "communicating with the Nurse Candidates and arranging negotiation, interview, and execution of offer letters or employment contracts, preparation of interview notes for presentation to, verification of Nurse Candidates' references when requested by the Company".

16.     Under the Agreement, NRG represented and warranted that each candidate would be "competent in the delivery of hemodialysis and peritoneal dialysis treatment, as applicable, and the care and treatment of dialysis patients sufficient to perform RN Services, in accordance with prevailing standards of practice."  It also promised to ensure that the candidates met numerous other requirements, and that the foreign nurses it recruited would be able to practice in the United States.  *See* Exhibit A, Agreement ¶ 3.

17.     Fresenius agreed to pay NRG a placement fee of $9,260 for each qualified nurse candidate placed at a Fresenius facility.

18.     Aliucci signed the Agreement on behalf of NRG, holding himself out to be the President of the company.

19.     At the time the Agreement was negotiated and signed, Aliucci and NRG asked Fresenius to advance a portion of the recruitment fee set forth in the Agreement to help cover some of NRG's costs, including international flights and initial housing for the nurses.

20.     In reliance on Aliucci and NRG's statements and promises, Fresenius agreed to prepay one half of the applicable placement fees. In total, Fresenius paid Aliucci and NRG approximately $260,000.

21.     After the Agreement was executed, Aliucci and NRG repeatedly stated that NRG had located and was ready to place qualified nurses at Fresenius facilities.

22.     Aliucci and NRG repeatedly sent electronic email to Fresenius, claiming to attach resumes from foreign nurses that were properly qualified and that had agreed to work at Fresenius dialysis facilities.

23.     Aliucci and NRG also informed Fresenius that they were completing the necessary paperwork to enable the nurses to travel to and work in the United States, and that they were purchasing airline tickets.

24.     Aliucci and NRG repeatedly provided Fresenius with specific dates on which they expected specific nurses to arrive at Fresenius dialysis facilities.

25.     After Fresenius paid Aliucci and NRG, the defendants continued to make various statements to Fresenius that purported to explain why not a single nurse had arrived as scheduled and why not a single nurse had been formally introduced to Fresenius.

26.     To date, NRG has not placed or introduced any nurses to Fresenius.

27.     On February 18, 2008, Fresenius exercised its right to terminate the Agreement for cause, and demanded a full refund of all monies paid to NRG. *See* Exhibit B.

28.    To date, neither NRG nor Aliucci have responded to Fresenius's February 18 letter.

29.    Upon information and belief, on February 6, 2008, a federal grand jury empaneled by the United States District Court for the Western District of Pennsylvania handed up an indictment against Aliucci, charging him with three counts of mail fraud.

30.    Upon information and belief, the indictment alleges that over the course of three and a half years, Aliucci billed Global Nursing Solutions, Inc., approximately $1 million through a contract between Global Nursing Solutions and NRG.  Upon information and belief, the indictment further alleges that Aliucci falsely claimed that he and NRG had recruited 200 nurses for Global Nursing Solutions.

## COUNT I

### Breach of Contract
### (Nurse Resource Group)

31.    All previous allegations are incorporated herein.

32.    NRG entered into a contract with Fresenius wherein it promised to use its best efforts to place 54 qualified nurses at Fresenius's dialysis clinics.

33.    In reliance on NRG's promises in the Agreement as well as statements by NRG and by its President, Anthony Aliucci, Fresenius advanced $260,000 of the total recruitment fee due to NRG under the terms of the Agreement.

34.    NRG is in material breach of its contract with Fresenius because it has failed to provide any of the nurses it promised to provide under the terms of the contract, and it has failed to introduce any nurses to Fresenius that meet the qualifications set forth in the contract.

35.    Fresenius has suffered and continues to suffer damages as a result of NRG's breach.

## COUNT II

### Misrepresentation, Fraud
### (Nurse Resource Group; Anthony Aliucci)

36.    All previous allegations are incorporated herein.

37.    The defendants made numerous materially false statements to Fresenius, including their claims and warranties that:

(a)    NRG had an extensive history of placing foreign nurses with facilities in the United States;

(b)    NRG had developed a worldwide network of experienced staffing and sourcing organizations and has access to thousands of qualified, experienced and reliable medical professionals who are interested in working in the United States;

(c)    NRG and Aliucci had located foreign nurses qualified and willing to work at Fresenius's dialysis clinics;

(d)    As a result of their recruitment efforts on Fresenius's behalf, NRG and Aliucci were incurring relocation costs such as flight and housing costs; and

(e)    NRG and Aliucci needed an advance of the recruitment fee to be paid under the Agreement to facilitate bringing nurses to Fresenius facilities.

38.    NRG and Aliucci knew that the statements identified in paragraph 37 were false at the time they were made.

39.     NRG and Aliucci made the statements identified in paragraph 37 with the intent to induce Fresenius into entering into a contract and to induce Fresenius to pay monies to NRG and Aliucci.

40.     Fresenius reasonably relied on NRG and Aliucci's materially false statements. As a result of its reliance on NRG and Aliucci's materially false statements, Fresenius has sustained substantial damages, including the loss of $260,000.

## COUNT III

### Violation of M.G.L. c. 93A
### (Nurse Resource Group; Anthony Aliucci)

41.     All previous allegations are incorporated herein.

42.     At all relevant times, NRG and Aliucci were engaged in the conduct of a trade or business within the meaning of Massachusetts General Laws, chapter 93A ("Chapter 93A").

43.     By all of the conduct described above, NRG and Aliucci have engaged in unfair or deceptive acts or practices in violation of Chapter 93A.

44.     The unfair or deceptive acts or practices committed by NRG and by Aliucci occurred primarily and substantially within the Commonwealth of Massachusetts. Such unfair and deceptive acts include:

     (a)     Making false and deceptive statements to Fresenius regarding NRG's experience, abilities, and network;

     (b)     Making false and deceptive statements to Fresenius regarding NRG's efforts to locate nurses qualified and willing to work at Fresenius's facilities; and

     (c)     Making false and deceptive statements to Fresenius claiming to be

incurring costs associated with relocating qualified foreign nurses to Fresenius's facilities in the United States; and

        (d)     Failing to return the $260,000 in recruitment fees that Fresenius advanced to the defendants under the Agreement.

45.     Fresenius has suffered and will continue to suffer damages as a proximate result of the unfair or deceptive acts or practices committed by the NRG and by Anthony Aliucci.

## JURY DEMAND

Plaintiff demands a jury trial on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that the Court: (a) enter judgment in its favor and against the defendants, (b) award treble damages, attorney's fees and costs to the plaintiff, and (c) order any further relief the Court deems appropriate.

Respectfully submitted,

NATIONAL MEDICAL CARE, INC.
d/b/a FRESENIUS MEDICAL CARE
NORTH AMERICA

By its attorney,

Ingrid S. Martin (BBO # 653632)
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, MA 02110
(617) 371-1000

Dated: March 10, 2008